## THE H. J. HINMAN.

## NEW YORK TRAP ROCK CORPORATION v. CORNELL STEAMBOAT CO.

District Court, S. D. New York.
Nov. 9, 1931.

Frederick W. Park, of New York City, for libelant.

Kirlin, Campbell, Hickox, Keating & McGrann, of New York City (Robert S. Erskine, of New York City, of counsel), for respondent.

PATTERSON, District Judge.

The respondent does an extensive business towing scows up and down the Hudson and also around New York Harbor. To facilitate making up tows for upriver traffic, it maintains in the Hudson, between Manhattan and New Jersey, stakeboats where scows to be towed up the Hudson by it may be tied. These stakeboats are old railroad floats anchored to the bottom, without motive power of their own. An employee of the respondent is in charge of each boat. Some of the scows are brought to the stakeboats by the respondent's tugs, others are brought by other towing companies. Thereafter the respondent's tugs pick up the scows at the stakeboats for the trip up the river.

The libelant has a large number of scows which carry loads of crushed stone from points up the Hudson to New York Harbor. It has a contract with the respondent whereby its scows are to be towed up and down the river exclusively by the respondent. For many years it has been the practice for the libelant to leave its scows bound upriver at one or another of the respondent's stakeboats.

On the morning of April 19, 1928, the libelant's scow H. J. Hinman was towed to the respondent's stakeboat No. 2, located opposite Thirty-Ninth street, Manhattan, and was left there for a tow up the Hudson. It had been brought there by a tug not under the respondent's control. During the day the wind freshened until it became a strong gale. The Hinman was tied between two other scows and the wind and waves caused the boats to toss about and bump badly. The men in charge of them slackened lines, put out fenders, and did what they could to prevent damage. They appealed to the man in charge of the stakeboat for help. He said that he would speak to a passing tug for help if one came by, but none came. The Hinman suffered severe injury from the bumping, to recover for which this suit was brought.

The libelant's grievance is that the towing company should have sent a tug out to the stakeboat to tow the scows to a sheltered berth, when the wind rose to a point of great severity. It is not clear that a tug could have done anything for the scows in this case; the attempt to tow them to another place might have made bad matters worse. But I prefer to base my decision upon another ground. In my opinion the towing company was under no duty to remove the scows to a safer place or to take any active measures to guard them. The contract between the two concerns is not in evidence, but it is undisputed that it deals only with towing, calling for delivery of scows at the towing company's stakeboats. There is nothing in such a contract which fastens upon the towing company an obligation to protect from vicissitudes of the weather all scows left at the appointed rendezvous, before the towing had begun. I have no doubt that a concern maintaining a stakeboat, like a concern maintaining a wharf, is under a duty to use reasonable care in furnishing to scows which tie up there at its invitation a berth free from hidden obstructions. But to go further, and to say that it must also take active measures to move a scow which is in danger of damage from storms, seems to me to be an extension of its duties for which there is no warrant. Its obligation in this respect is no greater than that of a concern in charge of a wharf.

For these reasons, the libel will be dismissed, with costs.